### CONCORD.

#### Of the qualification of voters, as to residence.

The election of Tilley Merrick, returned a member from the town of Concord, was controverted by Jonas Lee and others, on the following grounds alleged in their petition[1]:—

1. Because four persons were admitted to vote in the election, who were not qualified in respect to residence;

2. Because three persons were admitted to vote therein, who were not qualified in respect to property;

3. Because the votes of six persons who were qualified voters were illegally rejected; and

[1] 31 J. H. 38.

4. Because, if the votes, thus illegally received, had been rejected, the sitting member would not have had a majority of the votes, and if the votes, improperly received, had been rejected, Joseph Chandler would have had a majority.

This case, at the May session, upon the report of the committee on elections, was referred to the next session,[1] at which a great number of depositions were received, and the committee on the seventh of February, made a report[2] containing a statement of facts, as follows:—

"At a legal meeting of the voters in Concord, for the purpose of electing a representative, on the 7th day of May last past, the votes were as follows, to wit: for Tilley Merrick, 129, Joseph Chandler, 124, Stephen Barrett, 1.

The selectmen of Concord have, for several years past, adopted the following rule, relative to the admission of voters, to wit, that every man otherwise qualified, who was resident in Concord on the day of election, and also on the same day of the year next preceding, although he might have been absent between those periods, should be considered as having a constitutional residence.

The petitioners state, that the votes of John Dumerry and Thomas Dix, who had not a year's residence in Concord, were received in this election, and the votes of Jonas Wheeler, Charles Robbins, William Ward, Samuel Melvin, Jr., Charles Melvin, and Thomas F. Lawrence, legal voters, were rejected at said election, on the pretence that they had not the residence required by the constitution. The committee find, that John Dumerry was an indented apprentice to Mr. Vose, of Concord, and was twenty-one years of age in December, 1809; he continued to live with Mr. Vose until April last past; he then went to Charlestown, on a contract for one month; on the expiration of the month, he returned to Concord on Saturday previous to the election; he was undetermined when he returned to Concord, whether he should continue in Concord or return to Charlestown; and the day subsequent to the elec-

[1] 31 J. H. 173.      [2] Same, 284.

tion, he returned to Charlestown and there contracted to work one year.

Thomas Dix was an indented apprentice to Mr. Brown, of Concord, and was twenty-one years old in October last; he then went to Bangor and there worked at the saddler's trade four months on hire, and returned to Concord, where he continued until the election; after the election he went to Weston, to work for Mr. Hobbs.

Samuel Melvin, Jr., was born in Concord, and lived there until February, 1809; he then went to the state of New York, where he continued until November, 1809, when he returned to Concord; he left his tools and clothes at Concord, when he went to New York.

The committee are of opinion, that the selectmen, in receiving the votes of said Dumerry and Dix, decided correctly; and, as the said Melvin did in conversation give grounds to the selectmen, to believe that he had determined to establish himself in New York; the committee are also of opinion, that the selectmen did decide correctly in refusing his vote.

The committee also find that Jonas Wheeler was born in Concord, where his parents now live; that he was not absent from Concord, until he entered college, where he now continues; and spends all his vacations in Concord. Charles Robbins has lived several years in Concord; has frequently worked out of that town; he worked from May 3, 1809, to August 26, 1809, in Roxbury, his clothes were in Concord at his brother's, where his washing and mending were done; he was at Concord as often as once a fortnight, and had no other home; he was not on the list of voters in November, 1808, nor in the year 1809, and was not taxed in 1809.

Mr. Ward came to Concord in March, 1807, to live with D. Wheeler, where he continued until March, 1809; he came of age March, 1809; he then let himself to Wheeler for six months; after the expiration of this contract, he entered into partnership with Wheeler, and continued with him until December, 1809, when he went to Groton academy, where he continued seven weeks: he returned to Wheeler's in March,

and continued there until the last of April; he then let himself for four months in Lincoln, but agreed with Wheeler to return on the first of September, to carry out beef, on shares; his trunk, clothes, and papers, were, during all this period, at Wheeler's, whose house he considered his home; he did military duty in Concord, on the first of May, where he was taxed in 1809; he was also taxed for repairing the highways, in March, 1810, and voted at the April election in Concord.

Charles Melvin is twenty-five years old, and has resided in Concord ever since he was sixteen; since he was twenty-one, he has worked two years at farming, for Mr. Head, of Concord, and has worked part of three summers out of Concord; he never worked more than four months in any town but Concord since he was twenty-one; and, in April, 1809, he let himself to work six months, on the Middlesex turnpike, out of Concord. His chest and clothes have been in Concord, where his clothes have been mended, and he has always considered Concord as his home; he was not taxed in 1809, nor on the list of voters; he was a corporal in a company in Concord, and was excused from military duty, at the May training, on his own allegation, that he was liable to military duty in Acton, where he worked for a fortnight.

Thomas F. Lawrence lived, before he was twenty-one, with his brother, in Concord; after that time, he worked for him three or four years, except in the winter season, when he was keeping schools at different places; in September, 1808, he purchased a farm in Concord, which he still owns; in December, 1808, he took a school in Acton, for ten weeks; he then returned to Concord, where he remained one month, and then let himself to Seth Brooks, of Acton, for eight months, reserving liberty to return during that term, to Concord, to attend to his farm, and to assist his brother; during that term, he was in Concord as often as once a fortnight; he carried, during that term, several loads of wood from his farm in Concord to Cambridge, and assisted his brother in Concord in his haying, and was fourteen days in Concord, during that term; his

clothes and papers were at his brother's, in Concord, whose house he considered his home.

The committee are unanimously of opinion, that said Wheeler, Robbins, Ward, Melvin, and Lawrence, were entitled to vote in said election.

Four votes would vary the result of this election, and the committee are of opinion, that five votes were illegally rejected. But considering that the laws of this commonwealth afford ample redress to those persons, whose votes are illegally rejected, and that the selectmen of towns, on the eve of elections, have not the opportunity or power of thoroughly investigating nice questions of residence, and may, even after the most thorough examination, and actuated by the most correct motives, form erroneous opinions, on these difficult questions : therefore, the committee, although they are convinced that the selectmen of Concord did decide incorrectly, are also convinced that their error was that of judgment alone, and that Tilley Merrick, the returned member, do retain his seat."

This report was several times considered, on different days, and was finally recommitted[1] on the fourteenth of February.

On the twenty-seventh of February the committee reported[2] an amendment to their former report, by adding thereto, that " the five persons, whose votes were rejected, did, on the day of election, tender their votes for Joseph Chandler."

The report was again recommitted, and on the next day, which was the last of the session, it was ordered that the further consideration of all controverted elections, yet undecided on, be postponed till the first day of May next.

[The following report, signed by the chairman of the committee, appears among the papers on file :—

" The committee on elections beg leave to lay before the house their report on the Concord election, with the following amendment :

Strike out the last sentence, and insert in place thereof, ' Four votes might affect the election, and your committee are

---

[1] 31 J. H. 285, 314, 315.        [2] Same, 408.

12

of opinion, that five were illegally rejected. Therefore said Tilley Merrick is not entitled to a seat.'" This was probably intended to have been reported by the committee, in order to make their first report conform to the evident inclination of the house, (as manifested by their votes of recommitment,) to consider the election void, if the further consideration of the subject had not been cut off by the order above mentioned.]